IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COWTOWN FOUNDATION INC.,
P.O. Box 422
Arrington, TN 37014

                                            )

ANDREW DOUGLAS as Heir and Representative  )
Of the Estate of ED DOUGLAS And  )
ODELL DOUGLAS
P.O.Box 253
Wisner, LA 71378  )
                                            )

     *Plaintiffs,*                  ) Case No:_____

                                            )

v.                                            )

THE SECRETARY OF AGRICULTURE,  )
THOMAS VILSACK, AMERICAN BANKERS  )
ASSOCIATION, THE INDEPENDENT  )
COMMUNITY BANKERS OF AMERICA, AND  )
NATIONAL RURAL LENDERS ASSOCIATION  )
                                            )
     *Defendants.*               )

---

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

       COMES NOW the Plaintiffs, Cowtown Foundation, Inc., Andrew Douglas, and the Estates of Ed Douglas and Odell Douglass and hereby move this Honorable Court to grant the relief in the above styled caption.

## JURISDICTION AND VENUE

Amendment.

2.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

3.      This Court can grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201.

4.      Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of the property that is the subject of the action is situated in this district

5.      Venue is also proper under 28 U.S.C § 1391(e)(1)(B) because at least one Defendant are officers, employees, and agencies of the United States and a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of property that is the subject of the action is situated in this district.

## PARTIES

6.      Plaintiff, The Cowtown Foundation Inc., is a Tennessee Corporation and is subject to original and diversity jurisdiction of this court.

7.      Plaintiff, Andrew Douglas, an African American and member of a protected class and is the heir and a duly appointed Personal Representative of the Estates of Ed Douglas and Odell Douglas. Plaintiff Douglas resides in Wisner, Louisiana. This case is brought by Andrew Douglas in his capacity as heir and Personal Representative of the respective Estates, on behalf of the Estates and on behalf of the survivors of the decedents.

8.      Defendant, Thomas Vilsack, is the United States Secretary of Agriculture and leads the United States Department of Agriculture (USDA), which includes the Farm Service Agency.

This Defendant resides in Washington, D.C., and has contacts and regularly does business within this jurisdiction and the State of Tennessee.

9.  Defendant, American Bankers Association is domiciled in Washington, D.C. at 1120 Connecticut Ave NW, Washington, DC 20036 and has contacts and regularly does business within this jurisdiction and the State of Tennessee.

10.  Defendant, Independent Community Bankers of America, is domiciled in Washington, D.C. at 1615 L Street, NW, Washington D.C. 20036, and regularly does business within this jurisdiction and the State of Tennessee.

11.  Defendant, National Rural Lenders Association is domiciled at 2402 East 44th Place Tulsa, OK 74105, and has contacts and regularly does business within this jurisdiction and the State of Tennessee.

**<u>Preliminary Statement</u>**

12.  The Constitution's promise of equal justice under the law is that the government will treat people as individuals, not simply as members of their racial group. "In the eyes of government, we are just one race here. It is American," *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 239 (1995).[1] All Americans are entitled to equal treatment regardless of color. Plaintiffs bring this lawsuit to challenge a law that distributes benefits and burdens based on race in violation of the Equal Protection Component of the Due Process Clause of the Fifth Amendment to the Constitution.

---

[1] Scalia, J., concurring.

### Statement of Facts

#### The Original Pigford Case

13.     In 1997 and 1998, two class-action lawsuits entitled *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C.1999), *("Pigford")* and *Brewington v. Glickman*, No. 98-1693 (D.D.C. 1998). *("Brewington")*, respectively, were filed on behalf of groups of African American farmers. [2]

12.     Those lawsuits asserted that the U.S. Department of Agriculture ("USDA") had systematically discriminated against African American farmers based on race, in violation of the Fifth Amendment to the United States Constitution, the Equal Credit Opportunity Act, Title VI of the Civil Rights Act, and the Administrative Procedure Act.

14.     After the *Pigford and Brewington* cases were consolidated, they were settled by the parties in 1999 and became the largest civil rights settlement in history. The terms of the settlement were outlined in a Consent Decree entered by the Court on April 14, 1999, which stated that eligible claimants were required to file their claims with the case administrator by October 12, 1999.

15.     The Consent Decree also stated that claimants who could show "extraordinary circumstances" for missing the October 12, 1999 deadline could file at a later date. September 15, 2000 was set as the "late-filing" deadline.

16.     While approximately 22,700 claimants filed claims before the October 12, 1999 claims deadline, approximately 61,000 additional individuals requested permission to file claims

---

[2] Initially two cases were filed: *Pigford v. Glickman*, No. 97-1978 (D.D.C. 1997), and *Brewington v. Glickman*, No. 98-1693 (D.D.C. 1998). However, the court consolidated the two discrimination cases.

after the October 12, 1999 claims deadline but before the September 15, 2000 "late-filing" cut-off date.

17.     Fewer than 3,000 of the 61,000 "late-filers" were found to have demonstrated the required "extraordinary circumstances" for receiving extra time to file their claims. As a result, more than 58,000 "late-filers" did not have their discrimination claims heard. In addition, thousands of additional potential claimants filed late-filing petitions after the September 15, 2000 late-filing cut-off, but before June 18, 2008, the date of final enactment of the 2008 Farm Bill.

### The 2008 Farm Bill

18.     Congress passed, and on June 18, 2008, the President signed, a law providing claimants with a right to pursue their discrimination claims if they had petitioned to participate in *Pigford* but did not have their petitions considered because they were filed late. This law was passed as Section 14012 of the Farm, Conservation and Energy Act of 2008, also known as the 2008 Farm Bill.

19.     The Farm Bill did not "re-open" the *Pigford* case. Instead, Congress provided a new right to sue, which is subject to the specific conditions and limitations.

20.     Although the 2008 Farm Bill created a cause of action for many thousands of Black farmers, the total amount of funding provided in that bill for valid claims was $100 million.

### The February 18, 2010 Settlement Agreement

21.     Recognizing that $100 million would almost certainly not be enough to pay all valid claims, after nearly two years of litigation, on February 18, 2010, attorneys for tens of thousands of farmers and attorneys for USDA entered into a Settlement Agreement that would require Congress to fund an additional $1.15 billion for successful claimants (which would bring total funding for valid claims to $1.25 billion).

### The Claims Resolution Act

22.    On December 8, 2010, President Obama signed into law the Claims Resolution Act of 2010, which provided $1.15 billion (in addition to the $100 million already provided in the 2008 Farm Bill) to fund the February 18, 2010, Settlement Agreement. The Claims Resolution Act of 2010 also prescribed several new terms for incorporation into the Settlement Agreement.

### The Claims Process

23.    The Settlement approved by Judge Friedman on October 27, 2011 resolves all the claims asserted in the 23 lawsuits that were consolidated into the single case called *In re Black Farmers Discrimination Litigation*, 08-mc-0511 (D.D.C.).

24.    All timely submitted claims were reviewed and decided by the Court-appointed Neutrals. On August 6, 2013 Class Counsel filed an Unopposed Motion for Approval of Distribution of Funds, which the Court granted on August 23, 2013.

25.    The Court's Order approved the distribution of $1,200,425,182.08 as detailed in the Claims Administrator's Corrected Preliminary Final Accounting dated August 15, 2013. Under the terms of the Settlement Agreement, all decisions are final, and there is no process for further review or appeal.

### The Black Farmers Discrimination Litigation (BFDL) Cy Pres Funds

26.    Under the terms of the Settlement Agreement of the Consolidated Case approved by the U.S. District Court, to the extent that settlement funds remained undistributed following the final deadline for successful claimants to cash their settlement checks, such remaining funds were to be treated as *Cy Pres* funds.

27.    A *Cy Pres* Beneficiary must be a tax-exempt nonprofit organization, other than a law firm, legal services entity, or educational institution, which is providing agricultural, business

assistance, and/or advocacy services, including assistance under *Pigford* and the consolidated case, to African American farmers and/or ranchers.

28.     Plaintiffs allege their complaint against Defendants as follows:

## I.     DECLARATORY JUDGMENT

29.     A claim for declaratory judgment may only be brought to resolve an "actual controversy". 28 U.S.C. § 2201. Any court of the United States may declare the rights and other legal relations of any interested party. Accordingly, declaratory judgment jurisdiction requires disputes to be '"definite and concrete, touching the legal relations of the parties having adverse legal interests;' and that it be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune , Inc., v. Genentech*, 127 S. Ct. 764, (2007).

30.     Plaintiffs challenge the constitutionality of Defendants' discretion to afford relief for past discriminatory conduct and right to recovery for specific acts of discrimination for actual damages under Section 1006 of American Rescue Plan Act of 2021.

31.     Plaintiffs challenge the constitutionality of the Defendants ability to devise a scheme to purposefully not resolve the claims of African American farmers and then denying them the right to future loans, grants, subsidies and other federal assistance under the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

32.     Plaintiffs challenge the constitutionality of the Defendants rules and regulations to employ a dual administrative justice that denies timely resolution of administrative complaints pursuant to the Administrative Procedures Act (180 days) under the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

33.     Plaintiffs challenge the constitutionality of the Defendants' failure to resolve claims in a timely manner and ultimately dismissing the administrative claims without providing notice to the aggrieved African American farmers under the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

34.     Plaintiffs challenge the constitutionality of Defendant, Tom Vilsack's failure to act, when he was without discretion by Congressional Mandate to adhere to the moratorium provisions from Congressional Acts and granted the authority to cure all claims pursuant 42 U.S.C.§ 1480 and the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

35.     Plaintiffs challenge the constitutionality of Defendant, Tom Vilsack, in not allowing *Pigford* Class members the right to relief of violation of the *Pigford* Consent Decree before the ALJ as mandated in 15 U.S.C 1691 (ECOA) when Congress has not repealed the right to a hearing pursuant to the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

36.     Plaintiffs challenge the constitutionality of Defendant, Tom Vilsack's creation of a *Pigford* Class Action Team to direct the third-party neutrals on which *Pigford* Class members to provide injunctive relief to under the terms of the *Pigford* Settlement Agreement pursuant to the Equal Protection Component of the Due Process Clause of the Fifth Amendment, the Civil Rights Act of 1871 and Enforcement Act of 1871.

37.     Plaintiffs challenge the constitutionality of Defendants, the American Bankers Association, the Independent Community Bankers of America and the National Rural Lenders Association, of intimidating Defendant Vilsack from writing off debt of Black farmers through sections 1005 and 1006 of the American Rescue Plan Act so the Banks and their organizations will not lose profits, while not discouraging Defendant Vilsack from providing relief to White farmers

through Pandemic Relief of the ARPA and relief from the Commodity Credit Corp. from former President Trump's Trade War with China pursuant to the Equal Protection Component of the Due Process Clause of the Fifth Amendment, the Civil Rights Act of 1871 and Enforcement Act of 1871.

## II.   FIRST FEDERAL QUESTION AND CONSTITUTIONAL CHALLENGE

38.   Plaintiffs challenge the constitutionality of Defendants discretion in affording relief for past discriminatory conduct and right to recovery for specific acts of discrimination for actual damages under Section 1006 of American Rescue Plan Act of 2021.

39.   The American Rescue Plan Act of 2021, which allows the federal government to distribute 1.9 trillion dollars in federal funds, was signed into law on March 11, 2021. Section 1006(5) "(a) to provide financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in Department of Agriculture programs…"

40.   Pursuant to *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, (M.D. Fla. 2021), "if the compelling interest sought to be remedied by the legislature through Section 1005 is continued discrimination in USDA loans and programs, then relief directed at ending that discrimination would appear to be more narrowly tailored than providing complete and automatic debt relief on the basis of race."

41.   The *Wynn* court further found "[h]owever, that case and others like it involve eligibility determinations for funds to which the plaintiffs were entitled to receive under a specific law.[3]

---

[3] See also *America's Cmty. Bankers v. F.D.I.C.*, 200 F.3d 822, (D.C. Cir. 2000) noting the purpose of a similar award was "an attempt to restore to the plaintiff that to which it was entitled from the beginning."

42.     In other words, in those cases the plaintiffs alleged a deprivation of a benefit Congress intended for them to receive. In such cases, upon a finding that the government has deprived a plaintiff of a specific benefit to which the plaintiff was entitled under the law, the APA authorizes an award of specific relief, i.e., an award of the specific funds to which the plaintiff was entitled under the statute.

43.     The government's compelling interest to make debt payments to Socially Disadvantaged Farmers and Ranchers (SDFR) is subject to a substantial inquiry by the court. For example, the Defendants have willfully created a mechanism to deprive SDFRs the rights to a final agency action as required by the Administrative Procedures Act. The APA allows for 180 days for the agency to take action to correct mistakes to avoid the need for ECOA suits against it.

44.     Since the year 2000, the defendants have 20,000 discrimination complaints lodged at the Office for Civil Rights with less than four receiving a final agency decision. None with monetary damages.

45.     Section 1006 of the ARPA leaves the Defendants discretion to determine eligibility of SDFRs who have been discriminated against in the past. Based on the pattern and practice of the last 20 years of systemic discrimination by the Defendants, the discretion of Defendant Vilsack to administer the program in a timely fashion or equitable manner is a violation of the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

46.     Members of the Plaintiff, Cowtown Foundation Inc., were to be made whole in the year 2000, but the continued violations of ECOA and the breach of the Settlement Agreement led the Plaintiffs to foreclosure.

47.     The inaction of Defendant Vilsack, caused irreparable harm, sending the Plaintiffs into bankruptcy and bad credit.

48.    Some members of the Plaintiff, Cowtown Foundation Inc., have accepted discrimination since the year 2000 and subject to moratorium provisions against foreclosures and offsets until the administrative complaint was resolved.

49.    The injunctive relief for the Black farmers can be found in the *Pigford* Consent Settlement Agreement and the Food Energy and Conservation Act.

50.    Some members of Plaintiff ,The Cowtown Foundation Inc.,  have farm ownership loans with private banks that are guaranteed by the Dept. of Agriculture.

51.    Defendant Vilsack failed to sue the private banks pursuant to his authority under 42 U.S.C.§ 1480 and further breached the rules and regulations that governed the guaranteed loan contract.

52.    Some members of the Plaintiff Cowtown Foundation, Inc., discovered in May of 2021 that Defendant Vilsack closed the pending discrimination complaints without notifying the Black Farmers of the closure of the complaint in order to conspire with the private banks and the Department of Justice to circumvent the moratorium provisions to cease all foreclosures until the administrative complaint was resolved.

53.    Some members of the Plaintiff Cowtown Foundation, Inc., assert that the original discrimination for a loan subordination was never resolved or addressed by any court or tribunal of competent jurisdiction.

54.    Some members of the Plaintiff Cowtown Foundation, Inc., also learned years after the foreclosure, that the private banks further breached the guaranteed loan contract by keeping in excess funds that was to be paid to the USDA for the second mortgage of the foreclosed property.

55.    Some members of the Plaintiff Cowtown Foundation, Inc., received offer sheets from Defendant Vilsack in July of 2021, admitting that the second mortgages were not paid by the

private banks and as part of the ARPA, the Plaintiffs were entitled to debt relief to pay any taxes the debt payment may be subject to. In other words, the members of the Cowtown Foundation, Inc., were to pay the taxes on the money owed to the Department of Agriculture by the private bank.

56.     The actions after the foreclosure by Defendant Vilsack and the private banks amount to a continued violation of ECOA and leaving the discretion to Defendant Vilsack to pay past discriminatory acts is unconstitutional when Defendant Vilsack pays similarly situated White farmers pandemic relief funds, grants and/or other federal subsidies within usually 14 days of the availability of funds.

57.     The Plaintiffs, upon belief, now assert that Defendant Vilsack delayed the funding appropriated under the ARPA in order to allow White farmers to challenge the Congressional Act in Court.

58.     The White farmers have received 46 billion dollars in aid since 2019 with Black farmers getting 1 tenth of 1 percent of all grants and subsidies. Secretary Vilsack held the funding under the ARPA for 100 days and is believed to have orchestrated the scheme with Sid Miller, Texas Agriculture Commissioner and Steve Miller who was an advisor to the 45th President of the United States.

59.     It was no coincidence that a suit to block the aid to Socially Disadvantaged Farmers and Ranchers was filed in Wisconsin just 2 days after defendant Tom Vilsack spoke to the group of dairy farmers.

## III.     THE SECOND FEDERAL QUESTION AND CONSTITUTIONAL CHALLENGE

60.     Plaintiffs restate and reallege all allegations of paragraphs 1 through 59 as fully set forth herein.

61.     Plaintiffs challenge the constitutionality of the Defendants devising a scheme to purposefully not resolve the claims of Black farmers and then denying them the right for future loans, grants, subsidies and other federal assistance under the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

62.     By not resolving the discrimination complaints lodged by Black farmers in particular, the agency continues to discriminate by forcing Black farmers into adverse financial positions that last for a lifetime in most cases. For example, to receive future loans, grants, subsidies or federal subsidies with the agency there are credit requirements.

63.     As indicated in 7 CFR 3550.103 -Credit Requirements, applicants receiving grant only funding do not need a credit history evaluation. An applicant with an outstanding judgment obtained by the United States in a Federal court, other than in the United States Tax Court, is not eligible for a Section 504 grant or 504 loan.

64.     For loans, applicants must have a credit history that indicates a reasonable ability and willingness to meet debt obligations. Applicants with a credit score of 620 or higher, do not require Form RD 1944-61, a Credit History Worksheet or further evaluation. These applicants are considered to have acceptable credit histories, with the exception for loan applicant(s) with a significant delinquency described in Paragraph 4.12 (a), or delinquency of a federal debt.

65.     Defendant Vilsack has irreparably harmed Black farmers, by closing administrative complaints without providing notice to the farmers or further denying the acceptance of new complaints that involve federal assistance that can be resolved by the Administrative Law Judge or the Assistant Secretary for Civil Rights.

66.     Each individual plaintiff is African American and members of a protected class and by The SDFR or 7 CFR § 760.107.

67.     Similarly situated White farmers are not subject to the same discriminatory conduct as Black farmers. In fact, White farmers can file an ECOA complaint with the Department of Agriculture and have that complaint heard administratively by the Administrative Law Judge. *Moore v. United States Department of Agriculture*, 55 F.3d 991 (5th Cir. 1995).

68.     The inaction of the Defendants to resolve administrative complaints of members of a protected class has led to the Plaintiffs' ability to receive credit with other institutions and makes the Defendants liable for damages under 15 U.S.C. §§ 1681n and 1681o of the FCRA for the USDA's alleged violation of 15 U.S.C. § 1681s-2(b).

69.     The Plaintiffs in this action are pursuing damages for (1) a denial of credit by a mortgage company, (2) personal expenses related to disputing the allegedly inaccurate information, (3) emotional distress and mental anguish resulting from the alleged distribution of incorrect and disparaging information to parties both known and unknown, and (4) a diminished credit score which may hinder plaintiff's ability to obtain credit in the future. *Talley v. The USDA*, 595 F.3d 754 (2010).

70.     The pattern and practice of discriminatory conduct has further caused the Plaintiff to be ineligible for pandemic relief and other government subsidies in which corporations wholly owned or majority stakeholders of such corporations are eligible for grants, loans and other federal assistance that has caused irreparable harm to members of the Plaintiff, Cowtown Foundation, Inc.

71.     The Defendants further engaged in rulemaking that disqualifies Black farmers and any businesses they own from receiving pandemic relief of 500 million from the CARES ACT intended to diversify the meat processing industry, citing only existing operations are eligible. The fact is that all the eligible entities are overwhelmingly White citizens or White owned corporations.

72.     Defendant Vilsack, in an expeditious manner, forced the Defendants to exhaust funds going to White Farmers and White owned corporations. Combined with the culmination of past discriminatory conduct and inactions to resolve discrimination complaints or adhere to moratorium relief enacted by Congress to provide relief to Black farmers, the Plaintiffs are entitled to relief by this court for the pattern and practice of discriminatory conduct that made SDFRs ineligible to receive federal assistance from the year 2000 to present.

73.     The Court must decide if the effects of res judicata and weigh it against the continued violations of ECOA, fraudulent concealment of the Defendants and its agents should factor in the determination of which SDFR can seek relief under section 1006 of the ARPA. If Congress wanted to deny past actions brought in court it would have expressed it and not explicitly state that the funds could be used for past discriminatory acts.

74.     Members of the Cowtown Foundation, Inc., are domiciled all over the country. It was only recently discovered that the Defendants continued to commit fraud after real property was foreclosed on that included a continuing violation of ECOA.

75.     In *Yeoman v. Commonwealth Health Policy Bd.*, 983 S.W.2d 459, 466 (Ky. 1998), the Kentucky Supreme Court described the res judicata doctrine as follows:

> The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.[4]

76.     There are three requirements that must be satisfied for claim preclusion to bar subsequent litigation:  (1) there must be identity of parties;  (2) there must be identity of the causes

---

[4] *See* 983 S.W.2d 459, 464 (Ky. 1998) (quoting 46 Am. Jur. 2d Judgments § 514).

of action; and (3) the action must have been resolved on the merits. *Clemmer v. Rowan Water, Inc.*, No. 0:04 CV 165 HRW, 2006 WL 449266 (E.D. Ky. Feb. 23, 2006).

77.     In *Clemmer*, the Court found that the doctrine of res judicata did not bar the Clemmers from asserting the same claims in state court because there was no adjudication on the merits in the federal action.

78.     It is settled that a dismissal for lack of subject matter jurisdiction does not constitute an adjudication on the merits.  *Davis v. Powell's Valley Water Dist.*, 920 S.W.2d 75, 77 (Ky.App.1995).

## IV.     THIRD FEDERAL QUESTION AND CONSTITUTIONAL CHALLENGE

79.     Plaintiffs restate and reallege all allegations of paragraphs 1 through 78 as fully set forth herein.

80.     Plaintiffs challenge the constitutionality of the Defendants rules and regulations to employ a dual administrative justice that denies timely resolution of administrative complaints pursuant to the Administrative Procedures Act (180 days) under the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

81.     After the suspension of the federal assistance, Members of the Cowtown Foundation, Inc., often requested formal hearings before the ALJ. The ALJ then stated that the Office for Civil Rights must refer the complaint.

82.     Section 741 of ECOA does not provide that avenue chosen by Defendant Vilsack.

83.     Members of the Cowtown Foundation, Inc., have lodged numerous complaints with the Office for Civil Rights and as part of the Defendants scheme to deny an administrative decision, the Intake Division states that the office was without jurisdiction to hear matters on federally assisted programs and that was not a final agency decision by the ASCR or the agency.

84.     The law clearly authorizes the ASCR the authority to resolve such matters under 7 C.F.R. § 2.25(a)((i) Actions to enforce Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, prohibiting discrimination in federally assisted programs.

85.     In *Johnson v. USDA*, No. 15-1796 (8th Cir. 2016) the Court found that since 1966, the USDA has had internal guidelines prohibiting discrimination in its programs and activities and a mechanism for receiving and dealing with written complaints from individuals who believe they have experienced discrimination at the USDA's hands.[5]

86.     Currently, the USDA's antidiscrimination policy provides: (a) No agency, officer, or employee of the USDA shall, on the grounds of race, color, national origin, religion, sex, sexual orientation, disability, age, marital status, family/parental status, income derived from a public assistance program, political beliefs, or gender identity, exclude from participation in, deny the benefits of, or subject to discrimination any person in the United States under any program or activity conducted by the USDA. (b) No person shall be subjected to reprisal for opposing any practice(s) prohibited by this part, for filing a complaint, or for participating in any other manner in a proceeding under this part.

87.     The regulations setting forth the procedures for processing complaints pursuant to this non-discrimination policy are found at 7 C.F.R. Pt. 15d. Part 15d's mechanism for investigating complaints of discrimination is wholly a creature of regulation; Congress did not mandate its creation in ECOA or any other law.

88.     As the USDA itself explained in a notice of 14 proposed rulemaking, the regulations provide a mechanism for resolving complaints internally and thereby avoiding the need for a lawsuit.

---

[5] *See* 31 Fed. Reg. 8175 (1966) (promulgating 7 C.F.R. 15.52 (1967), the predecessor to the current 7 C.F.R. 15d.4).

89.     The Plaintiffs may be represented by counsel, but as conceded by counsel for the USDA and the Plaintiffs at oral argument, there is no procedure for questioning evidence submitted by the opposing party, much less an evidentiary hearing – a fact confirmed by the absence of provisions for such procedures in the USDA's manual specifying procedures for Part 15d investigations.[6]

90.     In addition, there appears to be no avenue for seeking judicial review of OASCR's final decisions. No statute provides for judicial review of decisions under 7 Part 15d, and we believe the Administrative Procedure Act does not do so either.

91.     The APA authorizes judicial review of a final agency action, *Bowen v. Massachusetts*, 487 U.S. 879, 891–92 (1988), but only with respect to claims "for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

92.     Section 704 does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures.[7]

93.     The Defendants have devised a scheme to automatically send all administrative complaints filed by Socially Disadvantaged Farmers to the Office for Civil Rights. It is at that point the discriminatory conduct by the Defendants come to life and have devastating effects on the careers of SDFRS and is at odds with the Supreme Court decision in *Boiling v. Sharp* 347 US 497 (1954), which stated that "racial segregation in the public schools of the District of Columbia is a denial to Negro children of the due process of law guaranteed by the Fifth Amendment."[8]

94.     Though the Fifth Amendment does not contain an equal protection clause, as does the Fourteenth Amendment, which applies only to the States, the concepts of equal protection and

---

[6] See generally USDA Departmental Manual 4330–001, supra.
[7] Bowen, Id. 487 U.S. at 903 (quoting Attorney General's Manual on the Administrative Procedure Act 101 (1947)).
[8] Id. at 498-500.

due process are not mutually exclusive and discrimination may be so unjustifiable as to be violative of due process.[9]

95.     Segregation in public education is not reasonably related to any proper governmental objective, and thus it imposes on [Black] children of the District of Columbia a burden that constitutes an arbitrary deprivation of their liberty in violation of the Due Process Clause.[10]

96.     In view of the Court's decision in *Brown v. Board of Education*, 347 U. S. 483 (1954), that the Constitution prohibits the States from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government.

97.     To segregate administrative complaints based on race are the very same principles held to be unconstitutional in *Boiling*. In fact, the debt payments that were due do SDFRs under the ARPA were found to be illegal by multiple courts nationally. Under the same reasoning of law, the method in which the Defendants ultimately continue the discrimination is at the core of why Congress sought to remedy pattern and pattern of discriminatory conduct that have put SDFRs in the financial despair of the federal assistance in the first place.

## V.    FOURTH FEDERAL QUESTION AND CONSTITUTIONAL CHALLENGE

98.     Plaintiffs restate and reallege all allegations of paragraphs 1 through as fully set forth herein.

99.     Plaintiff's challenge the constitutionality of the Defendants failure to resolve claims in a timely manner and dismissing the administrative claims without providing notice to the

---

[9] Id. at 499.
[10] Id. at 499-500.

aggrieved Black farmers under the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

100.   <u>Equitable Tolling</u>- However, "[f]ederal courts have typically extended equitable relief only sparingly" in suits against private parties, and "it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." *Irwin v. Department of Veteran Affairs*, 498 U.S. 89 (1990). In *Irwin*, the Court observed that equitable tolling has been found where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."

101.   <u>15 U.S.C. 1691e(f)</u>. The structure of 1691e(f) is more like the limitation provision in Title VII, to which the Court found equitable tolling applied in *Irwin*, than it is to the statute at issue in *United States v. Brockamp* 519 U.S. 347 (1997), Like Title VII, moreover, ECOA is a remedial statute amenable to exceptions for individualized equities.

102.   Section 1691e(f) does contain explicit exceptions to the limitation period, but the exceptions in ECOA are not as numerous or as intricate as those in the provision in *Brockamp*. In addition, the exceptions in ECOA extend the limitations period to allow a plaintiff who becomes aware of discrimination after the government commences enforcement proceedings to bring an action. This purpose is consistent with applying equitable tolling to the limitation period.

103.   Therefore, the ECOA's statute of limitations is, in appropriate circumstances, subject to the doctrine of equitable tolling.

104.   The application of the equitable tolling doctrine depends on the facts of each case. The Supreme Court has suggested in *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147 (1984),

that courts may properly allow tolling where a claimant has received inadequate notice... where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon . . . where the court has led the plaintiff to believe that she had done everything required of her, . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.[11]

105.    Courts have found notice inadequate where an agency fails to provide a claimant with notice required by statute. *Coles v. Penny*, 531 F.2d 609, 614-17 (D.C. Cir. 1976)[12].

106.    In addition, failure to meet a statutory deadline may be excused if it is the result of justifiable reliance on the advice of a government officer. *Bull S.A. v. Comer*, 55 F.3d 678, 681 (D.C. Cir. 1995) .[13]

106.    A final factor that courts have considered is whether an attorney represented the plaintiff. Courts are less likely to find equitable tolling if the plaintiff has legal representation. *Kelley v. NLRB*, 79 F.3d 1238 (1st Cir. 1996).[14]

107.    A plaintiff seeking to estop the government from asserting the statute of limitations in these cases might make two arguments. First, claimants might argue that USDA's actions led them to believe its administrative process tolled the running of the statute of limitations on a civil action. Second, plaintiffs might argue that USDA told them that it would settle their claims in an administrative process or led them to believe that relief would be available in the administrative process even if the statute of limitations ran on a judicial action. This belief, in turn, may have

---

[11] *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (quoting *Baldwin*, 466 U.S. at 151 (citations omitted)).

[12] Statute of limitations tolled where EEOC failed to provide notice of right to sue as required by statute) (interpreting *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292 (9th Cir. 1974) (tolling statute of limitations where EEOC failed to provide notice of right to sue required by its regulations).

[13] 55 F.3d 678, 681 (D.C. Cir. 1995) (quoting Jarrell v. United States Postal Serv., 753 F.2d 1088, 1092 (D.C. Cir. 1985).

[14] (No tolling where NLRB employee erroneously informed attorney that NLRB would serve defendant with charges because they represented plaintiffs generally deemed to have constructive knowledge of regulatory requirements).

lulled claimants into believing that they would be compensated by the USDA and that it therefore was unnecessary to seek relief in court.

108.    Members of the Plaintiff Cowtown Foundation, Inc., are often told by the Office for Civil Rights employees that they would call the private banks and urge them to hold off the foreclosure because they were going to resolve the administrative complaint. Moreover, members of the Cowtown Foundation, Inc., filed for a formal hearing before the ALJ due to the financial assistance being terminated after the foreclosure of their farms and again, the request was denied. Similarly Situated White Farmers are not denied hearings for the termination of federally assisted programs.

109.    Thousands of members of the Plaintiff Cowtown Foundation, Inc., are prevailing class members that was subject to total debt relief that included his farm ownership loan and moratorium provisions against foreclosures and offsets in case of a breach of the said agreement; right to a formal hearing on the merits before the ALJ to resolve any alleged breach of the settlement agreement.

110.    Defendant Vilsack violated all provisions and proceeded to foreclose against the Plaintiffs. Moreover, Plaintiffs filed for a formal hearing before the ALJ due to financial assistance being terminated after the foreclosure of their farms and again, the request was denied.

111.    Similarly Situated White Farmers are not denied hearings for the termination of federally assisted programs.

112.    Most members of the Cowtown Foundation, Inc., filed multiple discrimination complaints with the Office for Civil Rights, each complaint is still unresolved. Moreover, the members filed for a formal hearing before the ALJ due to their financial assistance being terminated after the foreclosure of their farms and again, the request was denied.

113.   Similarly Situated White Farmers are not denied hearings for the termination of federally assisted programs.

## VI.   FIFTH FEDERAL QUESTION AND CONSTITUTIONAL CHALLENGE

114.   Plaintiffs restate and reallege all allegations of paragraphs 1 through 113 as fully set forth herein.

115.   Plaintiffs challenge the Constitutionality of Defendant Vilsack's failure to act when he was without discretion by Congressional Mandate to adhere to moratorium provisions from Congressional Acts and granted the authority to cure all claims pursuant 42 U.S.C.§ 1480 and the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

116.   To qualify as affirmative misconduct, a government official's conduct must amount to "more than mere negligence, delay, inaction, or failure to follow an internal agency guideline." *Ingalls Shipbuilding, Inc. v. Department of Labor*, 976 F.2d 934, 938 (5th Cir. 1992).[15]

117.   Defendant Vilsack engages in a pattern and practice of misconduct to unlawfully close the pending program of SDFRs. Defendant Vilsack represented to Congress that there were only approximately 2000 Black farmers eligible for the debt write off or eligible for debt payments under section 1005 of the ARPA.

118.   In 2012 defendant Tom Vilsack sent 89,000 letters to Black farmers stating that they might be eligible for debt relief for *Pigford*.

119.   In an attempt to not pay actual damages of 20,000 discrimination complaints pending since the year 2000, Defendant Vilsack misled Congress to try to write off actual debt of SDFRs opposed to actual damages that is estimated at 200 billion.

---

[15] (Quoting *Mangaroo v. Nelson*, 864 F.2d 1202, 1204-05 (5th Cir. 1989)). Courts look for evidence that an official's misstatement was made with "knowledge of its falsity or with intent to mislead." *United States v. Marine Shale Processors*, 81 F.3d 1329, 1350 (5th Cir. 1996).

120.    In the same fashion, Defendant Vilsack purposely delayed the payments to those farmers so that White farmers could block the debt relief and further misled SDFRs so that they would not make scheduled payments due to the ARPA and the Department of Agriculture could begin foreclosure activity. This happened in Arkansas, even though there was an executive order prohibiting foreclosures and offsets against SDFRs.

121.    Defendant knowingly misled SDFRs that their debt would be paid so that the Department of Agriculture could distribute a new round of funding from the Pandemic and so that that money would be exhausted without including SDFRs.

## VII.    SIXTH FEDERAL QUESTION AND CONSTITUTIONAL CHALLENGE

122.    Plaintiffs restate and reallege all allegations of paragraphs 1 through 121 as fully set forth herein.

123.    Defendant Tom Vilsack failed to allow the *Pigford* Class members the right to relief for violations of the Pigford Consent Decree before the ALJ as mandated in 15 U.S.C 1691 (ECOA) when Congress has not repealed the right to a hearing pursuant to the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

124.    Defendant Vilsack has repudiated the *Pigford* Settlement Agreement and further violated mandates from Congress to allow Pigford Class members the right for a formal hearing on the merits before the Administrative Law Judge.

125.    Defendant Vilsack is without discretion to grant the hearing for the continued discrimination employed by the USDA against Black farmers.

126.    If Congress wanted to grant the Office for Civil Rights the authority to have first deferred the complaints of discrimination from Pigford Class members that were claims of breach, it would have so stated in section 741 of ECOA.

127.   Defendant Vilsack uses the Office for Civil Rights as a storefront to keep discrimination against Black farmers.

## VIII.   SEVENTH   FEDERAL   QUESTION   AND   CONSTITUTIONAL CHALLENGE

128.   Plaintiffs restate and reallege all allegations of paragraphs 1 through 127 as fully set forth herein.

129.   Plaintiffs challenge the constitutionality of Defendant Vilsack using the County Committee System to decide the credit worthiness of Black Farmers for loans and subsidies.

130.   The Georgetown Law Review took a deep probe into the Department of Agriculture's use of the County Committee System for continued discrimination against Black Farmers.[16]

131.   The Georgetown Law Review further examines the 1997 CRAT Report –" The CRAT Report from 1997 illustrated "a county committee system that shuts out minorities and operates for the favored few." The inherent problems with the elected-farmer-committee system had not notably changed since the earlier indictments, but the 1997 Report completely reversed course from the 1960s era assessments in a critical way. Where the 1962 Report alleged that discretion and independence from D.C. was a key to success of the farmer committees, and further,

---

[16] On page 1243 of a subchapter titled "The Life of Administrative Democracy." The Georgetown Law Review quoting the Columbia Law Review and an unsigned article that states "Columbia Law Review note from 1967 describes the "wholesale exclusion of Negroes from the processes of government," and uses the farmer-committee system as a key example. Among the elected farmer committees in the Southeast, agricultural governance was "under virtually all-white control—even where the people it affect[ed] [we]re mostly Negro." The Note continues, "The exclusion of Negroes from the . . . program mean[t] that decisions which can cause economic disaster for small Negro farmers [were] committed to rural southern whites." As long as social paradigms remained racially abusive, the racial impact of an electoral system was "inevitable."

the "wide-ranging and relatively autonomous local delivery structure" was a source of unmanaged, perhaps unmanageable, injustice.[17]

132.    The Department of Agriculture has incentivized the discrimination for the County Committee System. For example, when money is earmarked by Congress for Socially Disadvantaged Farmers, once those farmers are denied the loans and subsidies, that money is then added to the general funds for White farmers to enjoy.

133.    The denial of final agency decisions plays a major role in allowing the County Committee to further place the Black farmers in a peculiar adverse financial position that often leads to foreclosure.

134.    The Civil Rights Act of 1871 is at odds with the usage of the County Committee System by the Department of Agriculture.

135.    Under the Ku Klux Klan Act, 42 U.S.C. § 1985(1), Defendants may not "conspire to prevent, by force, intimidation, or threat, any person ... holding any office, trust, or place of confidence under the United States ... from discharging any duties thereof; or to induce by like means any officer of the United States to leave any ... place[] where his duties as an officer are required to be performed, or ... to molest, interrupt, hinder, or impede him in the discharge of his official duties."

---

[17] Elected committees are responsive to their electors rather than leadership in Washington, D.C. Thus, the local committees "tend to be influenced by the values of their local communities . . . rather than by standard policies promulgated at the national level." This structure undermines any effort at an institutional failsafe. Elected farmers are (too-) often compelled to racial discrimination by their communities, and D.C.'s efforts to curb discrimination are rebuffed because D.C. has little effective authority over administrators who are independently legitimated by local elections rather than by centralized appointment and oversight. The CRAT team therefore recommended that Congress establish more centralized control over the elected committees and, at the same time, remove certain authority, such as authority over loan eligibility determinations.

136.   The use of the County Committee System is a system used as conspiracy against Black farmers to deprive Black farmers of land, federal assistance and grants. In its totality, the Defendant, Secretary Vilsack and the Department of Agriculture use multiple methods, as aforementioned to deprive Black farmers of land, liberty, due process and equal protection as enjoyed by White citizens.

## IX.   EIGHTH FEDERAL QUESTION AND CONSTITUTIONAL CHALLENGE

137.   Plaintiffs restate and reallege all allegations of paragraphs 1 through 136 as fully set forth herein.

138.   Plaintiffs challenge the constitutionality of Defendants, the American Bankers Association, the Independent Community Bankers of America  and the National Rural Lenders Association to intimidate Defendant Vilsack from writing off debt of Black farmers through sections 1005 and 1006 of the American Rescue Plan Act so the Banks in their organization will not lose profits, but does not discourage Defendant Tom Vilsack to provide relief to White farmers through Pandemic Relief of the ARPA and relief from the Commodity Credit Corporation from former President Trump's Trade War with China pursuant to the Equal Protection Component of the Due Process Clause of the Fifth Amendment, the Civil Rights Act of 1871 and Enforcement Act of 1871.

139.   Under the Ku Klux Klan Act, 42 U.S.C. § 1985(1), Defendants may not "conspire to prevent, by force, intimidation, or threat, any person ... holding any office, trust, or place of confidence under the United States ... from discharging any duties thereof; or to induce by like means any officer of the United States to leave any ... place[] where his duties as an officer are

required to be performed, or ... to molest, interrupt, hinder, or impede him in the discharge of his official duties."

140.    Defendants American Bankers Association, The Independent Community Bankers of American and the National Rural Lenders Association threatened, conspired to prevent and intimidate Secretary Vilsack from writing off the guaranteed loans of Black farmers held at private banks of those organizations.[18]

141.    Due to the threats, conspiracy and intimidation by American Bankers Association, The Independent Community Bankers of American and the National Rural Lenders Association, Defendant Vilsack did not write off any loans or provide injunctive relief to Black farmers under the ARPA.

142.    Some members of the Plaintiff Cowtown Foundation, Inc., had guaranteed loans that were subjected to the write off and others planned to buy more land that could be guaranteed loans. Moreover, the Bankers interfered with business expectancy and grant relief from other pandemic relief programs.

143.    Defendants American Bankers Association, The Independent Community Bankers Of American and the National Rural Lenders Association did not threaten, intimidate or conspire the Secretary of Agriculture to hold up any loans guaranteed by the Department of Agriculture to White farmers that could ultimately be used to pay off existing loans held at the private banks with loan guarantees from the Department of Agriculture.

144.    Defendants American Bankers Association, The Independent Community Bankers of American and the National Rural Lenders Association caused thousands of guaranteed loans

---

[18]*See* https://www.nytimes.com/2021/05/19/us/politics/black-farmers-debt-relief.html.

not to be paid and interfered with billions of pandemic relief that could have been released to Black farmers.

145.    The private lenders are insured by the FDIC and therefore subject to equal protection under the Constitution.

**WHEREFORE,** Plaintiffs pray unto the Court that they have and recover from Defendants as follows:

a.    To enjoin the Defendants from distributing any further funding from the Cares Act or the Commodity Credit Corporation until this Court can determine the amount of damages of SDFRs from the year 2000 in grants, loans, subsidies, and other federal assistance by the Dept. of Agriculture that were denied to SDFRs that would have been eligible for subsidies, grants, loans and other federal assistance to present date.

b.    To enjoin the Defendants from denying formal hearing on the merits before the ALJ by SDFRs on race base determinations of the administrative complaints.

c.    To declare the dual administrative judicial system illegal at the Department of Agriculture illegal and further order the resolution of all once accepted discrimination complaints to be reopened if the affected farmer was not notified of the closure of the claims and the race based closure of claims by the ASCR or the Office for Civil Rights to be resolved within 180; to include the right to sue; and right to judicial review, if they are not resolved in the favor of complainant.

d.    To enjoin the Defendants from foreclosure and administrative offsets of all SDFRs with prior complaints lodged and the Office for Civil Rights since the year 2000 without notification to the complainant.

e.    To declare the foreclosures and administrative offsets of SDFR with pending discrimination program complaints after May 22, 2008, as unconstitutional if unresolved or resolved without notification to affected farmers; affected farmers shall be afforded a formal hearing on the merits before the ALJ per agency rules and regulations for actual damages.

f.    To declare it unconstitutional for SDFRs not to have discovery, hearing (complete with discovery and the right to have witnesses) and if necessary, a judicial review of the decision.

g.    To declare it unconstitutional for the Secretary of Agriculture in his discretion to decide what affected farmer receives damages from section 1006 of the ARPA and that all affected farmers shall have these rights determined for specific acts through the ALJ and judicial review, if necessary.

h.    To declare it unconstitutional and a violation of the Civil Rights Act of 1871, later codified as 42 U.S.C. § 1985(1), "conspire to prevent, by force, intimidation, or threat, any person ... holding any office, trust, or place of confidence under the United States ... from discharging any duties thereof; or to induce by like means any officer of the United States to leave any ... place[] where his duties as an officer are required to be performed, or ... to molest, interrupt, hinder, or impede him in the discharge of his official duties." To prevent Black farmers from receiving debt right off or the right to have past discriminatory acts settled under section 1006 of the ARPA.

i.    To declare it unconstitutional and tortious interference of business expectancy due to any violation of the KKK Act. "conspire to prevent, by force, intimidation, or threat, any person ... holding any office, trust, or place of confidence under the United States ... from discharging any duties thereof; or to induce by like means any officer of the United States to leave any ...

place[] where his duties as an officer are required to be performed, or ... to molest, interrupt, hinder, or impede him in the discharge of his official duties."

     j.       And for such other further and general relief as they may be entitled.

                           Respectfully Submitted,

_____

## CERTIFICATION

I, Coreay Lea, as a representative of the Cowtown Foundation Inc., under the penalty of perjury, state that the foregoing is true and correct.

State Of Tennessee

_____
Corey Lea
President of The Cowtown Foundation Inc.

Y-20-22
_____
Date

_____
Notary Public

U-20-22
_____
Seal and Date

Respectfully Submitted,

## **In Conclusion**

For the above reasons stated the Court should deny the Court to dismiss

Dated: April 27, 2022
Cheyenne, Wyoming
Charlotte, North Carolina

Respectfully submitted,

/s/ Jillian Hishaw_____

JILLIAN HISHAW
NC Bar # 57218
Hishaw Law, LLC
109 E. 17th St., Suite 5166
Cheyenne, WY 82001
Tel: (307) 228-0407
jhishaw@hishawlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2022, a true and exact copy of the forgoing pleading was filled electronically with the Clerk's office and served upon the parties as indicated below through the Court's ECF System:

Office of the United States Attorney
Counsel for Defendant Thomas Vilsack,
Secretary of the United States Department of Agriculture
Independent Community Bankers of America
National Rural Lenders Assn.
American Bankers Assn.


I hereby certify that on April 27, 2022, a true and exact copy of the foregoing pleading was filed electronically with the Clerk's office for Defendants as listed below:

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

The United States Attorney
555 4th St NW,
Washington, DC 20530

U.S. Dept. of Agriculture
1400 Independence Ave., S.W.
Washington, DC 20250

The Secretary of Agriculture,
Tom Vilsack
U.S. Department of Agriculture
1400 Independence Ave., S.W.

34

Washington, DC 20250

Independent Community Bankers of America
Rebecca Rainey
1615 L Street NW
Washington, DC. 20036

American Bankers Association
Rob Nichols
1120 Constitution Ave. NW
Washington, DC 20036

National Rural Lenders Assn.
Pam Moore – Wilcher
427 Western Hill Rd.
Pineville, LA. 71360-2641

By:/s/ Jillian Hishaw
JILLIAN HISHAW
WY Bar # 001
Hishaw Law, LLC
109 E. 17th St., Suite 5166
Cheyenne, WY 82001
Tel: (307) 228-0407
jhishaw@hishawlaw.com


*Counsel for Plaintiff*
